# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| DONALD S. PEIRCE, Individually and as the Testamentary Executor of the Estate of Ida Carol Maisel, deceased, JESSICA PEIRCE, and MARLA PEIRCE,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | CASE NO. C05-440-JCC<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

Plaintiffs Donald S. Peirce, Jessica Peirce, and Marla Peirce bring this action against Defendant United States of America, for injuries arising out of a car accident in downtown Seattle in which pedestrians Ida Carol Maisel and Jessica Peirce were struck by a car driven by Terrace Johnson, a Special Agent for the Internal Revenue Service. Maisel was killed and Jessica Peirce was injured in the incident. Plaintiffs assert that Defendant is liable for their injuries pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346. After bench trial and pursuant to Federal Rule of Civil Procedure 52(a), the Court makes the following findings of fact and conclusions of law:

ORDER — 1

## I.   Findings of Fact

On the afternoon of April 4, 2003, while acting within the scope and course of his employment, Agent Johnson was driving a government-issued Dodge Intrepid vehicle southbound on Fifth Avenue between Union Street and University Street.

The unposted speed limit was 30 miles per hour and the road was straight and slightly inclined north to south. There were three southbound lanes of travel; Agent Johnson was traveling in the middle lane.

About 30 feet behind Agent Johnson in the same lane of traffic was a bike messenger, Irving Arzeta. He watched as, about mid-block, the Dodge begin to drift toward the right without signaling. The Dodge swiped the right side of the bumper of a Volkswagen preceding him in his same lane of travel, causing the Dodge to slow only slightly and minimal damage to either car.

The Dodge then continued in a westerly direction. It left the roadway and traveled up over a raised cement curb onto a cement-paved sidewalk on the northwest corner of Fifth Avenue and University, where it struck pedestrians Ida Maisel and her daughter Jessica Peirce. The Dodge continued moving forward on the sidewalk until it struck a 1999 Ford F366 tow truck parked in the north lane of University Street. The Dodge then rolled back until it hit a concrete planter and came to a stop.

Arzeta told police that at no point did the Dodge's brake lights come on.

Agent Johnson was dead when he was pulled out of his car; efforts to resuscitate him were unsuccessful. An autopsy determined that he died a natural death, attributed to "heart disease due to the effects of longstanding high blood pressure on the heart muscle." On his death certificate, the cause of death is listed as "hypertensive cardiovascular disease." His death did not result from injuries sustained in the course of the accident. Agent Johnson suffered a cardiac event that caused

him to lose consciousness at some point in the accident, and ultimately this cardiac arrest was the cause of his death.

The Seattle Police Department follow-up report indicated that the Dodge was found to be in "park." Further, it indicated that the interior of the Dodge was messy. Food wrappers and drink cups were strewn about the passenger compartment and a partially eaten hamburger was located on the right passenger-side floor.

Maisel suffered basal skull fractures with multiple cerebral contusions and lacerations and secondary brainstem hemorrhage as a direct result of the incident which is the subject of this lawsuit. After a short hospitalization, she died as the result of these injuries. Jessica Peirce was injured and hospitalized after the accident, but after her initial hospitalization she did not seek further medical treatment. All the surviving members of the Peirce family have suffered greatly due to the death of Maisel, who by all accounts was of utmost importance in creating a happy family life.

The central factual dispute as to liability in this case was as to the timing of the cardiac event that caused Agent Johnson to lose consciousness and lose control of his vehicle. Defendant has contended since the outset that Agent Johnson suffered a spontaneous cardiac event and lost consciousness prior to hitting the Volkswagen in the lane in front of his car. Plaintiffs assert that Agent Johnson lost consciousness sometime later in the accident, after having committed one or more acts of negligence sufficient to subject Defendant to liability for his acts. They assert that he could have been distracted while eating the hamburger that was found on the floor of his car, or that he could have been reaching to pick up the hamburger, or a drink, off the floor of the car. According to this explanation, Agent Johnson's cardiac event was caused by the emotional stimulus of striking the Volkswagen in front of him.

ORDER — 3

Defendant's accident reconstruction expert, John Hunter, examined police records, the autopsy report of the King County Medical Examiner, and interview statements of witnesses to the accident obtained by Defendant, among other things. He concluded based on all the available evidence that Agent Johnson was incapacitated prior to the collision with the Volkswagen and for the duration of the crash. In so concluding, he relied on the path of the vehicle which suggests that it was not under operational control, witnesses who did not see the Dodge take any evasive maneuvers or activate its brake lights, and Agent Johnson's natural cause of death.

Plaintiff's rebuttal accident reconstruction expert, Richard Chapman, reviewed the same basic documentation that Hunter examined. Chapman testified that while he could understand how Hunter reached his conclusion, it was just as possible that Agent Johnson was distracted prior to the crash with the Volkswagen and that his cardiac arrest, and attendant loss of consciousness, occurred as the result of impacting the Volkswagen. Chapman relied on the hamburger found on the floor of the Dodge, the report of the Medical Examiner that Agent Johnson's stomach contained partially digested food, eaten relatively recently, and the account of one witness who saw the Dodge begin to drift but did not mention seeing Agent Johnson, a large man, in the vehicle. When asked how the absence of brake lights figured into his analysis, Chapman pointed out that this could be explained by inattentiveness as well. Chapman did not testify, however, that Plaintiffs' theory was more likely than the scenario in which Agent Johnson lost consciousness prior to colliding with the Volkswagen. The Court finds that Hunter and Chapman are both qualified and credible expert witnesses.

Plaintiffs' also introduced the expert testimony of Dr. Donald Reay, a forensic pathologist. Reay examined Agent Johnson's medical records, the autopsy report, and was familiar with the basic facts of the case from deposition testimony provided by counsel. Dr. Reay testified that

ORDER — 4

Plaintiffs' theory—that Agent Johnson was distracted by eating, or dropping and reaching for, the hamburger—was possible. Dr. Reay was asked for his opinion as to the timing of the cardiac event, and testified that "nothing in the pathology allows a conclusion to be drawn" as to whether the cardiac event occurred before or after the impact with the Volkswagen. Accordingly, while he agreed with Chapman that the scenario presented by Plaintiffs was possible, he was not willing to assert that negligent distraction was "more probable" than unconsciousness as the causal factor of the crash. The Court finds Dr. Reay to be a qualified and credible expert witness.

Defendant also presented an expert who examined the medical documentation in the case: Dr. Carol Buchter, a cardiologist. Like Dr. Reay, Dr. Buchter conducted a comprehensive review of Agent Johnson's medical records and the police and autopsy reports relating to the accident. Dr. Buchter testified that Agent Johnson's cardiac arrest was unforeseeable, spontaneous, and occurred without warning. Dr. Buchter also testified that loss of consciousness occurs very quickly after cardiac arrest, usually occurring within five to fifteen seconds. She further testified that she did not believe that Agent Johnson's cardiac arrest was caused by a sudden physical or emotional shock, because it is statistically unlikely for shock to precipitate cardiac arrest, and because pre-existing medical conditions make it even more unlikely that shock caused the cardiac arrest in the present case. Dr. Buchter opined that Agent Johnson's cardiac arrest occurred immediately prior to the accident. The Court finds Dr. Buchter to be a qualified and credible witness.

Defendant presented the expert testimony of Dr. Jon Nordby, a consultant in forensic science and forensic medicine, who reviewed police and autopsy records, and opined that Agent Johnson died of cardiac complications, a natural death. He also testified that it was not possible to identify the exact time of Agent Johnson's cardiac arrest to any degree of medical certainty based on the autopsy report. The Court finds Dr. Nordby to be a qualified and credible witness.

ORDER — 5

Plaintiffs also presented the expert testimony of Dr. Dan Johnson, a research psychologist and ergonomist. Dr. Johnson reviewed the police reports associated with the crash and a study issued by the National Highway Traffic Safety Administration, *The 100 Car Naturalistic Driving Study*, *available at* http://www.nhtsa.dot.gov/ (last checked May 25, 2007). The study reported that dining was a distraction involved in two out of fifteen rear-end collisions. Given the presence of the hamburger and fast food containers in the car, Dr. Johnson testified that eating or drinking while driving was a "definite possibility" as the cause of the crash. The Court has no doubt that Dr. Johnson is qualified to act as an expert, but is skeptical that the single study on which he relied provided a sufficient basis for forming an opinion as to the facts of this particular case. Thus, the Court declines to give Dr. Johnson's testimony any weight.

## II.   Conclusions of Law

Plaintiffs' claims are brought pursuant to the Federal Tort Claims Act, which provides a limited waiver of sovereign immunity for injuries arising from "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Accordingly, the parties agree that the United States is liable if Agent Johnson would be liable for negligently causing the accident under the law of the state of Washington.

The elements of a negligence claim in Washington are: (1) a duty to the plaintiff, (2) breach of the duty, and (3) injury to plaintiff proximately caused by the breach. *Hertog v. City of Seattle*, 979 P.2d 400, 406 (Wash. 1999). The driver of a motor vehicle has a duty to exercise reasonable care in the operation of the vehicle, which includes keeping the vehicle under control to avoid

collisions with other cars and pedestrians. *Presleigh v. Lewis*, 534 P.2d 606, 607 (Wash. Ct. App. 1975).

The closing arguments of the parties made clear that the parties have a pivotal dispute as to the burdens of proof applicable in this case. Plaintiffs contend that because they have made out a prima facie case of negligence, they are entitled to prevail unless Defendant is able to prove its affirmative defense by a preponderance of the evidence. Defendant contends that the ultimate burden of proof as to negligence remains with Plaintiffs notwithstanding its assertion of an affirmative defense.

Defendant's position is in accordance with Washington law. Defendant's assertion of an affirmative defense does not relieve Plaintiffs of their obligation to show by a preponderance of the evidence that the accident was caused by the negligence of Agent Johnson. This was established in the case of *Hardman v. Younkers*, 131 P.2d 177 (Wash. 1942), in which the Washington Supreme Court considered the shifting of burdens in a negligence action. At the close of his case, the plaintiff in that action had made out a prima facie case of negligence under the doctrine of *res ipsa loquitur*. *Id.* at 180. The defendant asserted the affirmative defense that the accident in question was unavoidable. The defendant, who lost after trial, argued on appeal that the trial court improperly imposed upon him the burden of proving that he was not guilty of negligence. The Washington Supreme Court was unequivocal that the burden of persuasion remains with the plaintiff:

> Since a general denial puts in issue all the facts alleged as constituting the negligence charged, and since proof of an "unavoidable accident" in its very nature tends to refute or rebut such charge as alleged in the complaint, the burden of proof on the issue of negligence remains with the plaintiff throughout his case and does not shift to the defendant upon his attempt to disprove negligence by showing that the injury came about through an unavoidable accident. Although a plaintiff may have made a *prima facie* case of negligence through the application of the doctrine of *res ipsa*

ORDER — 7

> *loquitur*, he still has the burden of proof . . . upon that issue when finally submitted to the trier of fact.

*Id.* at 181; *see also Hufford v. Cicovich*, 290 P.2d 709, 711-712 (Wash. 1955). *Hardman* is directly applicable to the present case. Though Plaintiffs did not make their prima facie case of negligence via the doctrine of *res ipsa loquitur*, there is no reason to believe this is relevant to the basic holding of *Hardman*. Washington law is clear that the burden of persuading the Court by a preponderance of the evidence that Agent Johnson acted negligently remains with the Plaintiff, notwithstanding Defendant's affirmative defense.

This Court has previously held that Plaintiffs have made out a prima facie case of negligence. (Dkt. No. 70.) A few pieces of evidence provided by Plaintiffs—Agent Johnson's collision with the Volkswagen, and his driving on the sidewalk—were sufficient to raise a genuine issue as to negligence. Having found that there existed a genuine issue of fact as to negligence, the Court concluded that it would be appropriate to resolve the case on summary judgment only if Defendant could show that there was no genuine issue that Agent Johnson's alleged negligence was caused by a sudden and unforeseen loss of consciousness, and therefore excused under *Kaiser v. Suburban Transportation System*, 398 P.2d 14, 17 (Wash. 1965) ("A driver who becomes suddenly stricken by an unforeseen loss of consciousness, and is unable to control the vehicle, is not chargeable with negligence."). Because there remained a genuine issue as to the timing of the cardiac event and the attendant loss of consciousness, the Court twice declined to enter summary judgment against Plaintiffs.

Establishing a genuine issue of material fact sufficient to survive summary judgment is not the same as having shown that Agent Johnson was negligent by a preponderance of the evidence, however. The Court is not persuaded that Plaintiffs have shown by a preponderance of the evidence that the crash occurred as the result of negligent acts by Agent Johnson. Plaintiffs' experts were in

ORDER — 8

harmony in their conclusion that Plaintiffs' theory that Agent Johnson was shocked into cardiac arrest upon negligently making impact with the Volkswagen was *possible*. Dr. Reay and Chapmen were likewise in harmony in their refusal to say that this theory was *more likely* than Defendant's theory that Agent Johnson went into cardiac arrest and lost consciousness before making impact with the Volkswagen. Plaintiffs' evidence is insufficient to show that some act of negligence preceded the cardiac arrest that caused Agent Johnson's death. Plaintiffs' experts unanimity that Plaintiffs' theory was "equally probable" as Defendant's is insufficient to show that Plaintiffs' theory was more probably than not true under the preponderance of the evidence standard.

Moreover, even if Defendant was required to prove its affirmative defense by a preponderance of the evidence under Washington law, the Court finds that it has done so. There is much evidence that supports Defendant's theory that Agent Johnson lost consciousness before impacting the Volkswagen in front of him. Defendant's expert Dr. Buchter testified that it was exceedingly rare for a cardiac arrest to be caused by an external stimulus such as physical or emotional shock. She testified that this was even less likely given Agent Johnson's long history of heart disease.

Most persuasive to the Court, however, is the eye-witness report of the bicycle messenger who was traveling behind Agent Johnson when the accident occurred, and told police that he never saw the Dodge's brake lights come on. Putting on the brakes is a reflexive action that occurs rapidly when a conscious driver finds himself in a dangerous situation. If Agent Johnson was driving distractedly, surely the impact of hitting the Volkswagen would have caused him to put on the brakes. Even Plaintiffs' expert, Chapman, acknowledged as much. Chapman testified that nonetheless, it was possible that the cardiac arrest and attendant loss of consciousness occurred so rapidly upon impacting the Volkswagen that Agent Johnson did not have time to put on the brakes.

ORDER — 9

The only testimony as to how quickly a person loses consciousness upon cardiac arrest was that of Defendant's expert, Dr. Buchter, who testified that the loss of consciousness usually occurs within five to fifteen seconds. Surely Agent Johnson would have been able to put on the brakes in this time period even if his cardiac arrest had been initiated by the slight impact with the Volkswagen. Chapman's explanation is so unlikely that it verges on impossibility. The Court concludes that Defendant has shown that it is more likely than not the case that Agent Johnson lost consciousness before hitting the Volkswagen, making out its affirmative defense.

The Court would like to extend the most sincere of sympathies to the Peirce family. It was heart-wrenching to hear the testimony of Donald Peirce, and his daughters Marla and Jessica Peirce, as to the effect that the loss of their wife and mother, Ida Maisel, has had on the family. Though the law does not permit them to recover here, this cannot diminish the tragedy that they have suffered. The Court hopes that the passage of time permits their hearts and family to heal.

SO ORDERED this 30th day of May, 2007.

_____
THE HONORABLE JOHN C. COUGHENOUR
UNITED STATES DISTRICT JUDGE